UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| LAURINE M. CARRAGHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:11 CV 213 |
| | ) | |
| INDIANA TOLL ROAD | ) | |
| CONCESSION COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

<u>OPINION and ORDER</u>

I.      BACKGROUND

Plaintiff Laurine Carragher began working for defendant Indiana Toll Road

Concession Company in 2007 as a toll maintenance technician. (DE # 25-3 at 8, Pl.'s Dep.

20:21; *id.* at 12, Pl.'s Dep. 34:8.) Plaintiff believes that she was the only full-time female

technician working for defendant at that time. (*Id.* at 19, Pl.'s Dep. 45:14-15; *id.* at 35,

Pl.'s Dep. 71:6-7.)

Defendant maintained an employee handbook, which outlined the company's

policies and rules. (*See, e.g.,* DE # 25-2 at 16-20.) The handbook required employees to

"maintain proper standards of conduct at all times." (*Id.* at 19.) The handbook stated: "If

an individual's behavior interferes with the orderly and efficient operation of a

department, corrective disciplinary measures will be taken, up to and including

discharge." (*Id.*) The handbook listed "insubordination" and "disrespect toward fellow

employees, visitors or other members of the public" as examples of conduct that may

result in disciplinary action. (*Id.*) Plaintiff received and read a copy of the handbook. (DE # 25-3 at 35, Pl.'s Dep. 2-5; *Id.* at 61.)

Plaintiff was initially supervised by Donald Sutton. (*Id.* at 14, Pl.'s Dep. 36:5.) Sutton remained plaintiff's supervisor until he retired in August of 2009. (*Id.*, Pl.'s Dep. 36:25; DE # 31-2 at 1, Fedders Aff. ¶ 2.) Plaintiff was next supervised by David McClean (DE # 25-3 at 23, Pl.'s Dep. 55:21-22), who plaintiff believed did not treat her right. (*Id.* at 16, Pl.'s Dep. 42:3.) McClean called plaintiff on her cellphone between four and six times, accusing her of being rude and telling her to be civil. (*Id.*, Pl.'s Dep. 42:7-10.) He also implied that plaintiff was rude to other employees. (*Id.*, Pl.'s Dep. 42:10-12.) Plaintiff disagreed with McClean's contention that she was rude to anyone. (*Id.*, Pl.'s Dep. 42:16-18.)

At the end of 2009, plaintiff received a performance evaluation from McClean that stated that plaintiff needed improvement in tardiness and absenteeism and should show a more positive outlook, be less critical, and be more welcoming of feedback. (*Id.* at 62-63.) Plaintiff claimed that as a result of her evaluation, she was unfairly put on a "Personal Improvement Plan." (DE # 25-3 at 57; *id.* at 29, Pl.'s Dep. 64:7-25; *id.* at 53, Pl.'s Dep. 156:9-11.) Plaintiff complained about the review to defendant's human resources manager, Rick Fedder, and defendant's Chief Information Officer, Jim Crowe. (*Id.* at 20, Pl.'s Dep. 50:8-11.)

On February 4, 2010, Crowe completed a reevaluation of plaintiff (*id.*, Pl.'s Dep. 50:12-15; *id.* at 67), changing plaintiff's ratings to show that she "fully meets" job

requirements in terms of attendance. (*Id.* at 65.) However, Crowe did not remove McClean's remarks that plaintiff should show a more positive outlook, be less critical, and be more welcoming of feedback. (*Id.* at 66.) Crowe added additional comments, stating that plaintiff "should work to improve her communication skills. Specifically, she should learn how to modify her communication style to the situation. Laurie can sometimes be a bit too blunt and she could gain more respect and cooperation by tempering her style. This is not so much a shortcoming as an opportunity for improvement that will make her job easier and allow her to be more productive." (*Id.*) In addition to receiving a reevaluation, plaintiff's work improvement plan was also rescinded. (*Id.* at 20, Pl.'s Dep. 50:15-17; *id.* at 53, Pl.'s Dep. 156:9-17.)

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was received by the EEOC on February 4, 2010. (DE # 25-3 at 57.) In the charge, plaintiff claimed that she was given a lower score on her evaluation by McClean than her male co-workers. (*Id.*) She also claimed that she was unfairly put on the improvement plan due to her gender. (*Id.*) Plaintiff later testified that she believed the company's Chief Executive Officer, Fernando Redondo, was telling McClean to discriminate against her, because "[n]obody does anything without express blessing of Fernando Redondo." (*Id.* at 22, Pl.'s Dep. 54:20-23.)

Around the start of 2010, the company was reorganized, and plaintiff's department moved from under the umbrella of information technology ("IT") to under the umbrella of the toll collection department, which was headed by Gloria Utley. (*Id.* at

3

52, Pl.'s Dep. 148:13-15; *id.* at 32, Pl.'s Dep. 68:22-24.) Utley assigned Mike McCombs to serve as team leader over plaintiff's part of the department. (*Id.* at 40, Pl.'s Dep. 79:17-21.) Plaintiff testified that she was never given a meaningful opportunity to apply for and be considered for the team leader position. (*Id.* at 52, Pl.'s Dep. 148:5-7; *id.* at 54, Pl.'s Dep. 157:1-18.)

On May 27, 2010, plaintiff met with toll collection manager Utley and tollway operations supervisor Jennifer Cronin. (*Id.* at 24, Pl.'s Dep. 56:12-17; *id.* at 68.) At the meeting, plaintiff was given a copy of a letter authored by Utley and witnessed by Cronin regarding plaintiff's unwillingness to accept work and her poor communication skills. (*Id.* at 68.) Specifically, the letter described Utley's concern that plaintiff "refused to accept trouble tickets if it was close to the end of [her] shift," "became confrontational" with other employees attempting to serve her with trouble tickets, and improperly sent trouble tickets back to the IT department. (*Id.*) Utley stated that in the future plaintiff "must respond with respect" to her co-workers. (*Id.*) The letter informed plaintiff that it was intended to "formally put you on notice that you need to improve in the areas mentioned above." (*Id.*) Plaintiff's pay and hours did not decrease as a result of the letter. (*Id.* at 33, Pl.'s Dep. 69:19-23.) Plaintiff perceived the letter as retaliation for the filing of her first EEOC charge. (*Id.* at 24, Pl.'s Dep. 56:20-22.) Plaintiff believed the action was taken at the direction of Redondo, the company's CEO. (*Id.* at 25, Pl.'s Dep. 57:2-6.)

On July 6, 2010, the EEOC received plaintiff's second charge of discrimination. (*Id.* at 69.) In this charge, plaintiff stated that she was subjected to "harassment" by Utley in retaliation for filing her first EEOC charge. (*Id.*) Plaintiff stated that she was accused of refusing to do her job, being confrontational, and not respecting others. (*Id.*) Plaintiff stated that male technicians were respected for their observations and suggestions, while plaintiff was considered uncooperative and argumentative. (*Id.*)

Plaintiff was unhappy with the fact that the company did not use the correct parts for the equipment it operated. According to plaintiff, at one point McCombs fabricated a piece of equipment that did not meet the requirements that would allow the equipment to function properly. (*Id.* at 40, Pl.'s Dep. 79:4-7.) As a result, the equipment fell apart. (*Id.*) Because the company did not have the right part or any spare parts, plaintiff got upset. (*Id.,* Pl.'s Dep. 79:7-10.) Plaintiff stated that she reported problems of this nature to her superiors like McCombs, but her input was not valued. (*Id.* at 51, Pl.'s Dep. 144:3-23; *see also id.* at 55, Pl.'s Dep. 161:8-20; *id.* at 56, Pl.'s Dep. 162:10-14.)

On August 6, 2010, McCombs and plaintiff had a discussion about some equipment. McCombs attested that plaintiff was not happy about having to install new equipment. (DE # 25-4 at 3, McCombs Aff. ¶ 3.) McCombs further stated that in response, plaintiff became visibly upset and stated: "These Mother Fuckers need to buy us the original parts, I don't have the tools to modify these machines, you should send these parts back to these bastards and make them get us what we need, what is wrong

5

with those cocksuckers!" (*Id.*) Plaintiff testified that though she swears at work and probably used obscene language in the August 6 exchange with McCombs, it was not an argumentative or heated exchange. (DE # 25-3 at 42, Pl.'s Dep. 81:23-24.) Further, plaintiff stated that her August 6 statements were not directed *at* McCombs, but just happened to occur in a discussion with McCombs about parts that did not fit the machines. (*Id.* at 41, Pl.'s Dep. 80:12-10, 23-24.)

On August 19, 2010, plaintiff left a voicemail on McCombs' phone. (DE # 25-4 at 3, McCombs Aff. ¶ 5.) McCombs attested that in this voicemail, plaintiff requested that the company order the right parts and to "tell them cheap asses down at Central to order them!" (*Id.*) During her deposition, plaintiff admitted: "I think I called them cheap asses at central supply." (DE # 25-3 at 40, Pl.'s Dep. 79:11-12.)

On August 24, 2010, plaintiff was terminated. (*Id.* at 8, Pl.'s Dep. 20:21.) Plaintiff was provided with an "Employee Disciplinary Action Notice"; under "Type of Offense," a box was checked next to "Rudeness to Customers/Coworkers." (*Id.* at 71.) The document cited plaintiff's prior meeting with Utley and Cronin, noting that plaintiff had already been warned that her "confrontational approach to employees is not appropriate." (*Id.*) Further, the document stated that on August 6, 2010, plaintiff became argumentative and used explicit obscene language directed at her team leader (McCombs). (*Id.*) The notice also stated that on August 19, 2010, plaintiff left a voicemail on her team leader's cellphone, calling the employees of the central facility "cheap asses" and using a "rude and abrasive" tone of voice. (*Id.*)

6

Plaintiff believed she was unfairly singled out for punishment for foul language because she is a woman. She also believed that her male co-workers were treated less severely for their offenses in the workplace. In particular, plaintiff took issue with Dave Kloko. (*Id.*, Pl.'s Dep. 59:13-17.) According to plaintiff, Kloko was excessively tardy and absent. (*Id.,* Pl.'s Dep. 59:13-17; *id.* at 45, Pl.'s Dep. 90:12-13.) Further, plaintiff attested that Kloko once reacted to being verbally reprimanded about his attendance by "acting very strange" and destroying a company cell phone. (*Id.* at 28, Pl.'s Dep. 63:5-17.) Plaintiff claimed she feared for her safety around Kloko because of this incident (*id.* at 27, Pl.'s Dep. 62:21-23; *id.* at 45, Pl.'s Dep. 90:13-16), but she did not know if he was ever disciplined for it (*id.* at 28, Pl.'s Dep. 63:22-23). Plaintiff also attested that another employee, Stan Freed, was rude and loud to plaza supervisors and other co-workers, and plaintiff believed he was never disciplined. (*Id.* at 35, Pl.'s Dep. 71:13-21; *id.* at 45, Pl.'s Dep. 90:11-12.) In general, plaintiff perceived her male co-workers' performances to be less satisfactory than her own "by a long shot." (DE # 25-3 at 26, Pl.'s Dep. 59:6-11.)

Plaintiff's third EEOC charge was received by the EEOC on October 25, 2010. (DE # 25-3 at 70.) In this charge, plaintiff claimed that after she filed her first two EEOC charges, she endured "continual retaliation" in the form of discipline, termination, and denial of unemployment benefits. (*Id.*) No further details were stated. After the EEOC issued right-to-sue letters for all three of plaintiff's EEOC charges (DE # 25-3 at 43, Pl.'s Dep. 87:13-16), plaintiff filed the present lawsuit alleging gender and age discrimination, retaliation, and intentional infliction of emotional distress. (DE # 1.)

Defendant has moved for summary judgment on all of plaintiff's claims, citing to and providing excerpts of plaintiff's own deposition testimony and company records in support of its motion. (DE # 23.) The court granted plaintiff's belated motion for an extension of time to file a response. (DE # 29.) Plaintiff then filed her response,[1] providing two affidavits in support of her motion, one of which is unsigned and unsworn. (DE # 30.) Defendant replied (DE # 31), and the motion is now ripe for ruling.

## II.    LEGAL STANDARD

FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

---

[1] Plaintiff failed to submit a "Statement of Genuine Disputes" identifying material facts that she believed were genuinely disputed, as required by N.D. IND. LOCAL R. 56-1. Such a statement is a critical element of any response to a motion for summary judgment, because without it, the movant's version of the facts are accepted as undisputed. In this case, however, few facts are actually disputed, and even if plaintiff's error is overlooked, she still cannot survive defendant's motion.

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986); *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) (citing *Anderson,* 477 U.S. at 255). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966, 968 (7th Cir. 1998); *Doe,* 42 F.3d at 443. Importantly, the court is "not required to draw *every* conceivable inference from the record [in favor of the non-movant]-only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M., v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (emphasis added).

## III.    DISCUSSION

### A.    Gender Discrimination Claims

Plaintiff alleges that defendant violated Title VII of the Civil Rights Act of 1964, which forbids an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [the individual's] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). She also alleges that defendant violated the State of Indiana's prohibition on sex discrimination. IND. CODE § 22-9-2-3. Because

9

Indiana courts have specifically and explicitly adopted federal standards and caselaw in interpreting and applying their own civil rights laws, *Filter Specialists, Inc. v. Brooks,* 906 N.E.2d 835, 839 (Ind. 2009); *Ind. Civil Rights Comm'n v. S. Ind. Cas & Elec. Co.,* 648 N.E.2d 674, 680-81 (Ind. Ct. App. 1995), the following analysis of federal discrimination law applies equally to plaintiff's claim under Indiana law.

A plaintiff may prove employment discrimination using either the "direct method" or the "indirect method." *See, e.g., Cerruti v. BASF Corp.,* 349 F.3d 1055, 1060-61 (7th Cir. 2003). Under the direct method of proof, a plaintiff must show through a preponderance of direct and/or circumstantial evidence that the employer's decision to take an adverse job action against the plaintiff was motivated by an unlawful purpose, such as race or sex. *Id.* at 1061. As defendant correctly points out, the record contains no evidence demonstrating that any of defendant's alleged decisions to take any adverse job actions against plaintiff were motivated by gender. Accordingly, the direct method of proof cannot be employed in this case, and the court will analyze plaintiff's claim under the indirect method.

The indirect, or "burden-shifting," method was originally set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). Under this method, the plaintiff carries "the initial burden under the statute of establishing a prima facie case of . . . discrimination." *Id.* To establish a prima facie case of discrimination, a plaintiff must establish, by a preponderance of the evidence, that: (1) she is a member of a protected class; (2) her job performance was meeting her employer's legitimate expectations;

(3) she suffered an adverse employment action; and (4) another similarly situated individual who was not in the protected class was treated more favorably. *Coleman v. Donahoe,* 667 F.3d 835, 845 (7th Cir. 2012); *Radentz v. Marion County,* 640 F.3d 754, 757 (7th Cir. 2011). Once such a showing is made, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Coleman,* 667 F.3d at 845. If the employer does so, then the burden shifts back to the plaintiff to offer evidence suggesting that the offered explanation is a pretext for discrimination. *Id.*

The first step of the analysis in this case is plaintiff's four-element *prima facie* case. The parties do not dispute the first element, that plaintiff is a member of a protected class. The second and fourth elements are disputed, but it is easiest to begin with the third element (the existence of an adverse employment action), as it limits the necessary analysis significantly. In her complaint, plaintiff alleged that defendant took various actions against her based on her gender, such as terminating her, failing to promote her to Team Leader, giving her a false, poor evaluation, discussing with her the need for civility on the job, and issuing her a warning about her communication style. Defendant addressed each of these alleged actions in its motion for summary judgment. However, plaintiff failed to articulate law or facts supporting a discrimination claim based on any

11

of them, except her termination.[2] Indeed, plaintiff has expressed no interest in pursuing

the majority of the alleged employment actions any further, as a basis for this lawsuit:

> Defendant spent much time [in its motion for summary judgment] throwing
> wood on a fire concerning the lack of ITR's actions before termination as not
> "adverse" under the *McDonnell Douglas Case.* What action could be more
> "adverse" than termination? What does it matter if all the actions leading up
> to termination were not adverse? This is just a smokescreen set up to throw
> the court off track. The ultimate adverse action is termination.

(DE # 30-1, Pl.'s Resp. at 7.) Because plaintiff failed to address any potential bases for

her discrimination claim other than her termination, the court considers those

additional potential bases abandoned. *Palmer v. Marion County,* 327 F.3d 588, 597-98 (7th

Cir. 2003) (failure to address claim in response to summary judgment motion is deemed

abandoned). This simplifies matters considerably, leaving only plaintiff's claim that she

---

[2] Plaintiff very briefly touches on her "failure to promote" theory in her response brief (DE # 30-1, Pl.'s Resp. at 7-8), but it is difficult to decipher any meaningful argument on this point. In any event, defendant moved for summary judgment on this particular claim due to plaintiff's failure to include any facts related to this claim in her EEOC charge (DE # 24-1), and plaintiff failed to address that matter in her response brief, meaning she has conceded the issue. *Domka v. Portage County, Wis.,* 523 F.3d 776, 783 (7th Cir. 2008) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal.").

Even if she had addressed the issue, she would still lose. The Seventh Circuit Court of Appeals has rejected the contention that all discriminatory actions by an employer should be considered by a district court, even if only a few alleged acts were mentioned in the EEOC charge. *Jones v. Res-Care, Inc.,* 613 F.3d 665, 670 (7th Cir. 2010) (permitting plaintiff to proceed on retaliation claim, but rejecting "failure to promote" claim as procedurally barred due to failure to include relevant allegations in EEOC charge). Because plaintiff failed to include any facts relevant to her "failure to promote" claim in any of her three EEOC charges (DE # 25-3 at 57, 69, 70), the court would consider the claim procedurally barred.

12

was wrongfully terminated for the court's consideration. Defendant does not, and cannot, dispute that termination qualifies as an adverse employment action, so the third element of plaintiff's prima facie case is deemed satisfied, as it relates to plaintiff's only remaining theory of discrimination.

This leaves the second and fourth elements of plaintiff's prima facie case. To satisfy the second element, plaintiff must establish, by a preponderance of the evidence, that she was meeting her employer's legitimate expectations. *Radentz,* 640 F.3d at 757. Plaintiff's evidence on this issue is twofold. First, plaintiff has, herself, testified that she thought the complaints regarding her communication style were unfounded. (*See, e.g.,* DE # 25-3 at 16, Pl.'s Dep. 42:16-18.) However, an employee's "own evaluation of his work cannot be imputed to [his employer], and is insufficient to permit his case to survive past summary judgment." *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522,* 657 F.3d 595, 603 (7th Cir. 2011).

Second, plaintiff has submitted two affidavits in support of her response brief. The "affidavit" of Jack Miltenberger, which is unsigned and neither sworn nor executed under penalty of perjury, and bears no indication that Miltenberger has ever even seen or read it, is inadmissible. *DeBruyne v. Equitable Life Assur. Soc'y of U.S.,* 920 F.2d 457, 471 (7th Cir. 1990) (affidavit not notarized or made under penalty of perjury "was not within the range of evidence that the district court could consider"). The other affidavit is that of her former supervisor, Donald Sutton, in which Sutton attested that plaintiff "was a valued employee and did a good job of reporting things that needed to be

13

repaired," and that he did not remember plaintiff using foul language at an inappropriate time. (DE # 30-2 at 3, Sutton Aff. ¶¶ 2, 4.) However, Sutton only worked with plaintiff until August of 2009 (DE # 25-3 at 14, Pl.'s Dep. 36:25; DE # 31-2 at 1, Fedders Aff. ¶ 2), and defendant's issues with plaintiff's communication style occurred between the end of 2009 through her termination in August of 2010. "[T]he issue is not the employee's past performance but 'whether the employee was performing well at the time of [her] termination.'" *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) (quoting *Karazanos v. Navistar Intern. Transp. Corp.*, 948 F.2d 332, 336 (7th Cir. 1991)). Accordingly, Sutton's affidavit fails to show by a preponderance of the evidence that plaintiff was meeting defendant's legitimate expectations at the time of her termination.

Though defendant does not have the burden to demonstrate that plaintiff was not meeting its expectations, it is worth noting that the majority of the evidence in the record suggests that, at the time of plaintiff's termination, defendant had simply reached the breaking point in its tolerance of plaintiff's brash demeanor and use of inappropriate language. Since the end of 2009, plaintiff had received negative feedback from three different supervisors (McClean, Utley, and McCombs) about the lack of civility and respect in her communication style, which culminated in August of 2010 with her termination. The Seventh Circuit has affirmed numerous times that a demonstrated history of disrespectful and abrasive communications generally defeats an employee's efforts to demonstrate that she was meeting her employer's legitimate

14

expectations. *See, e.g., Fane v. Locke Reynolds, LLP,* 480 F.3d 534 (7th Cir. 2007) (client's complaint about employee's communication style coupled with abrasive e-mail to co-workers demonstrated that she was not behaving in the manner employer expected); *Herron v. DaimlerChrysler Corp.,* 388 F.3d 293, 300 (7th Cir. 2004) (plaintiff who performed some aspects of his job well, but had confrontational and disrespectful attitude, could not show he was meeting employer's legitimate expectations). Similarly, the plaintiff in this case has failed to show, by a preponderance of the evidence, that she was meeting her employer's legitimate expectations sufficient to establish the second element of a prima facie case of discrimination.

Even supposing she were able to do so, plaintiff has a similar problem in establishing the fourth element of her prima facie case: that a similarly situated employee was treated differently.[3] In disciplinary cases, a "comparable" employee is one who is similarly situated with respect to performance, qualifications, and conduct. *Radue v. Kimberly–Clark Corp.,* 219 F.3d 612, 617 (7th Cir. 2000). "This normally entails a showing that the two employees dealt with the same supervisor, were subject to the

---

[3] On this point, plaintiff's counsel has missed the mark, as a legal matter. In her brief, plaintiff's counsel states: "That ITR never demonstrated that it treated male co-workers who used colorful language similarly, and that many of them are still employed with ITR shifts the burden back to ITR to show that the behavior was nondiscriminatory, not a mere 'pre-text' for gender discrimination." (DE # 30-1, Pl.'s Resp. at 5.) But plaintiff is wrong on both the premise and the conclusion. It is plaintiff, not the defendant, who has the burden to: (1) show that defendant treated a similarly situated individual more favorably, in the first stage of the *McDonnell Douglas* analysis; and (2) offer evidence demonstrating that the defendant's offered explanation is a pretext for discrimination, in the third stage of the *McDonnell Douglas* analysis. *Coleman v. Donahoe,* 667 F.3d 835, 845 (7th Cir. 2012).

same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* at 617–618.

Plaintiff asserts in her brief that a co-worker named Dave Kloko was similarly situated because he used similar language without being disciplined. (DE # 30-1, Pl.'s Resp. at 3, 5.) However, there is no evidence in the record to support this assertion. Plaintiff submitted no evidence of her own on this issue, so the court is left to rifle through the evidence submitted by defendant, such as excerpts of plaintiff's deposition testimony in search of evidence to support plaintiff's case (something this court is not required to do). Even assuming plaintiff's own deposition testimony on the subject would suffice, none of it suggests that Kloko used language similar to that used by plaintiff and was not similarly disciplined. Plaintiff does testify that Kloko was excessively tardy and absent (DE # 25-3 at 26, Pl.'s Dep. 59:13-15, 21-22) and on one occasion destroyed a company cell phone (*id.* at 28, Pl.'s Dep. 63:13-17). However, for Kloko to be considered similarly situated, he has to be an employee "who engaged in similar interpersonal conduct but who [was] not subjected to the same disciplinary measures." *Herron*, 388 F.3d at 301 (plaintiff fired for disrespectful and argumentative nature failed to demonstrate similarly situated employee was treated differently, because she did not point to fellow employee who communicated in similar manner but was not disciplined).

16

Plaintiff has attested that Stan Freed was rude and loud to plaza supervisors and other co-workers, but was never disciplined (DE # 25-3 at 35, Pl.'s Dep. 71:13-21; *id.* at 45, Pl.'s Dep. 90:11-12), but plaintiff has not pointed to any facts regarding Freed's (or Kloko's) performance, qualifications, job standards, the identity of his supervisor, or anything at all from which the court might draw a comparison between them and plaintiff. Though the similarly situated inquiry is a "flexible one" and an employee need not show "'complete identity'" in comparing herself to the better treated employee, she still "'must show substantial similarity.'" *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 405 (7th Cir. 2007) (quoting *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 618 (7th Cir. 2000)). In this case, plaintiff has pointed to virtually no facts at all about Freed or Kloko, much less any facts from which the court might conclude that either one was similarly situated to plaintiff, even just substantially. In short, the evidence in the record does not support plaintiff's attempt to satisfy this element of her prima facie case.

Even assuming that this shortfall could also be overcome and plaintiff could satisfy her four-element prima facie case, the second stage of the *McDonnell Douglas* analysis simply requires defendant to articulate a legitimate, non-discriminatory reason for plaintiff's termination. *Coleman,* 667 F.3d at 845. By pointing out that it fired plaintiff due to her history of disrespectful and profane comments, defendant has easily done so. *See Herron,* 388 F.3d at 301 (volatile behavior and poor attitude were legitimate non-discriminatory reasons for action); *Brill v. Lante Corp.,* 119 F.3d 1266, 1273 (7th Cir. 1997) (abrasive personality was legitimate non-discriminatory reason for termination)*; Dewitt*

17

*v. Proctor Hosp.,* 381 Fed. App'x 585, 587 (7th Cir. 2010) (personality conflict with supervisor was legitimate non-discriminatory reason for termination).

At this point, the burden returns to plaintiff to prove by a preponderance of the evidence that defendant's stated reason is a pretext for discrimination. *Gordon v. United Airlines, Inc.,* 246 F.3d 878, 886 (7th Cir. 2001); *Burdine,* 450 U.S. at 256 ("The [plaintiff's] burden now merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination."). The focus of the pretext inquiry is whether the proffered reason is a lie. *O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 635 (7th Cir. 2011). Because defendant's reason for firing plaintiff is also the basis for its conclusion that she was not meeting expectations, the question of whether plaintiff's performance was satisfactory merges with the inquiry into whether the stated reason was pretextual. *Jones v. Ill. State Toll. Hwy. Auth.,* No. 11-3482 , 2013 WL 363350, at *3 (7th Cir. Jan. 31, 2013).

Plaintiff argues that the affidavits she submitted with her response brief show that plaintiff's language did not differ from her male co-workers, meaning she must have been singled out for this behavior. (DE # 30-1, Pl.'s Resp. at 5.) As the court has already stated, the affidavit of Jack Miltenberger is inadmissible. As for the affidavit of Donald Sutton, it is barely relevant, as Sutton only worked with plaintiff until August of 2009 (DE # 25-3 at 14, Pl.'s Dep. 36:25; DE # 31-2 at 1, Fedders Aff. ¶ 2), and issues concerning plaintiff's communication style occurred after McClean replaced Sutton. Aside from these affidavits, plaintiff offers no other evidence to support her case. She

repeatedly urges the court to infer discrimination from the fact that other male employees were not disciplined for using similar language (*see, e.g.,* DE # 30-1, Pl.'s Resp. at 4-6), but there simply is no evidence in the record to support this assertion, either in the form of plaintiff's deposition testimony or otherwise. Accordingly, plaintiff has not shown by a preponderance of the evidence that defendant's purported reason for terminating her was pretextual. Accordingly, summary judgment for defendant is appropriate as to plaintiff's federal and state gender discrimination claims.

**B.     Age Discrimination Claims**

In her complaint, plaintiff sued for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*. She also alleges that defendant violated the State of Indiana's prohibition on age discrimination. IND. CODE § 22-9-2-2. The court considers federal caselaw and standards in analyzing both of these claims. *Filter Specialists,* 906 N.E.2d at 839; *Ind. Civil Rights Comm'n,* 648 N.E.2d at 680-81.

As with gender discrimination, a plaintiff defending against a defendant's motion for summary judgment on an age discrimination claim may rely on the direct and/or the indirect methods of proof. *See Faas v. Sears, Roebuck & Co.,* 532 F.3d 633, 641 (7th Cir. 2008). Under the direct method, a plaintiff must offer evidence that "points directly" to a discriminatory reason for the employer's action. *Atanus v. Perry*, 520 F.3d 662, 671-72 (7th Cir. 2008). The indirect, or "burden-shifting," method allows a plaintiff

to avoid summary judgment if she can survive the three-phase *McDonnell Douglas* analysis described in detail above. *Id.* at 672-73.

In this case, plaintiff devotes exactly one sentence of her summary judgment response brief to her age discrimination claims.[4] She points to no evidence of age discrimination which might support her case under the direct method, nor does she cite to the existence of any facts which might establish a prima facie case of age discrimination under the indirect method. Accordingly, plaintiff has failed to satisfy her burden under either method with respect to her age discrimination claim, so the court grants defendant's motion for summary judgment as to that claim.

### C.    Retaliation Claim

Plaintiff also sued for retaliation in violation of Title VII, the ADEA, and Indiana law. Under Title VII's anti-retaliation provision, it is unlawful for an employer to "discriminate against" an employee "because he has opposed any practice made an unlawful employment practice" by the statute or "because he has made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). The ADEA contains a similar provision. 29 U.S.C. § 623(d), as does the Indiana Code, IND. CODE § 22-9-2-8. The court considers federal caselaw and standards in analyzing all of these claims. *Filter Specialists,* 906 N.E.2d at 839; *Ind. Civil Rights Comm'n,* 648 N.E.2d at 680-81.

---

[4] Specifically, plaintiff states: "The statement by Defendant that if ITR wanted to discriminate against Plaintiff due to her age they would have never hired her defies logic and insults us all." (DE # 30-1, Pl.'s Resp. at 5.)

Like a discrimination claim, a retaliation claim can be established through either the direct or indirect method. *Jajeh v. County of Cook,* 678 F.3d 560, 569 (7th Cir. 2012). Plaintiff relies on only the indirect method in this case, which utilizes the familiar burden-shifting method of *McDonnell Douglas,* 411 U.S. 792. Under the indirect method of proof, a plaintiff must first establish a *prima facie* case of retaliation. This is typically accomplished by showing that: (1) after lodging a complaint about discrimination, (2) only she, and not any otherwise similarly situated employee who did not complain, was (3) subjected to an adverse employment action, even though (4) she was performing her job in a satisfactory manner. *Whittaker v. N. Ill. Univ.,* 424 F.3d 640, 647 (7th Cir. 2005). Thereafter, the burden is placed on defendant to provide a legitimate, non-discriminatory reason for the challenged action. *Id.* If defendant does so, the burden returns to plaintiff to establish that those proffered reasons were pretextual. *Id.*

Plaintiff has the same problems with her retaliation claims as she did with her gender discrimination claims. With regard to her prima facie case, plaintiff cannot demonstrate that she was performing her job in a satisfactory manner (the fourth element). As explained in detail above, plaintiff's only admissible evidence on the question of her job performance is Sutton's affidavit, which is only remotely relevant because Sutton stopped working for defendant before plaintiff's communication issues with her supervisors began. The remainder of the record fails to show by a preponderance of the evidence that plaintiff was performing satisfactorily. In fact, most

21

of the record demonstrates negative feedback from multiple supervisors about plaintiff's communication style from the end of 2009 through her termination in 2010.

Further, plaintiff has made no attempt to demonstrate the existence of similarly situated individuals (the second element). She fails to even suggest any potential individual in her brief. If she meant to rely, once again, on David Kloko or Stan Freed as comparitors, the comparisons would fail for the same reasons set forth above with respect to plaintiff's gender discrimination claims: the record simply lacks sufficient information about Kloko and/or Freed to discern any similarities between them and plaintiff.

These shortcomings, alone, damn plaintiff's attempt to satisfy her prima facie case and in turn her entire retaliation claim. However, the court notes for the record that even if she had succeeded in establishing her prima facie case, defendant easily satisfies its burden of articulating a legitimate, non-discriminatory reason for her termination (namely, lack of civility and respect in interpersonal communications). Accordingly, the burden returns to plaintiff to prove that this reason is actually pretextual. She fails to satisfy this burden. As the court explained with regard to plaintiff's gender discrimination claims, plaintiff's only evidence on this subject is Sutton's affidavit, which is temporally irrelevant, and her argument that other male or younger employees were not disciplined for using similar language is unsupported in the record. Accordingly, plaintiff's retaliation claims fail and summary judgment for defendant is appropriate.

### D.      State Law Retaliatory Discharge Claim

Plaintiff has also sued for retaliatory discharge in violation of the public policy principles of the State of Indiana. An analysis of this claim begins with basic principles of Indiana employment law. Indiana recognizes two types of employees: contractual employees, who generally may not be terminated except for cause, and "at-will" employees, who can be terminated at any time and without reason. *Orr v. Westminster Village North, Inc.,* 689 N.E.2d 712, 717 (Ind. 1997). The Indiana courts have carved out two exceptions to the general rule that an "at-will" employee can be terminated at any time and without reason, both of which are grounded in public policy principles. First, an employee may sue for retaliatory discharge if the employee was terminated after exercising her right to file a worker's compensation claim. *Frampton v. C. Ind. Gas Co.,* 297 N.E.2d 425, 428 (Ind. 1973). Second, an employee may sue if she is fired for refusing to commit an illegal act or breach a statutorily-imposed duty. *McClanahan v. Remington Freight Lines, Inc.,* 517 N.E.2d 390, 392-93 (Ind. 1988).

There is no dispute in this case that plaintiff was an "at-will" employee, as her employment was not based on a contract for a definite or ascertainable amount of time. *Orr,* 689 N.E.2d at 717. Plaintiff's claim is that the second exception to the "at-will" doctrine (the *McClanahan* exception) applies in this case, because she was punished for speaking up about the poor quality of parts being used in the Indiana toll system. According to plaintiff, she was "repeatedly put in a position where she was having to defend the use of home made parts, shoddy workmanship and the like. She chose to

23

report these safety and other violations to her superiors. She even got angry about it. These reports made her a target for an adverse action." (DE # 30-1, Pl.'s Resp. at 9.)

The Seventh Circuit Court of Appeals considered an argument similar to plaintiff's in *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 503-04 (7th Cir. 1999) (examining Indiana law). In that case, the employee argued that he was terminated for reporting a claimed safety violation to his employer's safety division. *Id.* at 504. The Seventh Circuit held that his situation did not fit into the *McClanahan* exception to the "at-will" employment doctrine because the employee did not fulfill any statutorily-imposed duty when he reported the violation to his employer's safety division. What Indiana law protected, the court reasoned, was the filing of a complaint with the state occupational safety commission. *Id.* (citing IND. CODE § 22-8-1.1-38.1). Because the employee had only reported the claimed violation to his employer, and not to the state commission, the *McClanahan* exception provided him with no protection from termination. *Id.* at 504.

Plaintiff's state law retaliatory discharge claim fails for the same reason. Plaintiff did not report any claimed safety violations to the state occupational safety commission or any other safety authority; rather, plaintiff complained about the claimed safety violations to her superiors. Accordingly, plaintiff did not fulfill any statutorily-imposed duty when she spoke up about the purported safety issues, and the *McClanahan* exception does not provide plaintiff any relief from the general rule that "at-will" employees may be terminated at any time and without cause. Summary judgment for defendant is appropriate on this claim.

24

### E.    Intentional Infliction of Emotional Distress

Plaintiff has also sued for intentional infliction of emotional distress ("IIED") under Indiana law. Historically, Indiana courts have not permitted IIED claims based on employment relationships gone sour, finding the scenarios insufficiently extreme and outrageous to justify the tort as a matter of law. *Mehling v. Dubois County Farm Bur. Coop. Ass'n,* 601 N.E.2d 5, 9 (Ind. Ct. App. 1992) (Indiana recognizes no cause of action for IIED in wrongful discharge case brought by "at-will" employee); *McCreary v. Libbey –Owens–Ford Co.,* 132 F.3d 1159, 1167 (7th Cir. 1997) ("Indiana courts have been reluctant to award damages for intentional infliction of emotional distress in employment cases.").

In *McCreary,* the Seventh Circuit rejected an employee's IIED claim because "[i]t is not our place to expand the tort of intentional infliction of emotional distress further than the Indiana courts have already done." *McCreary,* 132 F.3d at 1167. This court similarly declines to permit an IIED claim based on alleged emotional harm stemming from the decline of plaintiff and defendant's "at-will" employment relationship. Accordingly, defendant is entitled to summary judgment on this claim.

### F.    Harassment Claim

Plaintiff briefly alludes to a possible sexual harassment claim in her response to defendant's motion for summary judgment (without citation to any law or evidence), suggesting via her attorney's argument that plaintiff was called perverse names, was separated from another female employee, and was subjected to pornography on the job,

all at the hands of male co-workers. (DE # 30-1, Pl.'s Resp. at 3.) This attempted claim fails for two reasons. First, there is not even a vague mention of this type of sexual harassment in any of plaintiff's EEOC charges (DE # 25-3 at 57, 69, 70), rendering the claim procedurally barred. *Jones v. Res-Care, Inc.,* 613 F.3d 665, 670 (7th Cir. 2010).[5] Second, though plaintiff argues that the aforementioned conduct took place, she cites to and the record contains no evidence supporting these arguments. Accordingly, to the extent that plaintiff attempts to wage a harassment claim in this case, defendant is entitled to summary judgment on it.

## IV.    CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (DE # 23) is **GRANTED.** Defendant's motion for summary ruling on its motion for summary judgment is **DENIED.** (DE # 26.)

---

[5] Plaintiff does use the term "harassment" in her July 2010 EEOC charge. (DE # 25-3 at 69.) Specifically, plaintiff states: "Since I filed my original EEOC # 470-2010-00926 alleging gender and age discrimination I have been subjected to harassment by Toll Collection Manager Gloria Utley." (*Id.*) Plaintiff further describes being written up, being accused of refusing to do her job, being called confrontational and disrespectful, and having her suggestions considered uncooperative and argumentative. (*Id.*) None of this alleged "harassment" is similar to the name-calling and exposure to pornography described in her response brief (DE # 30-1, Pl.'s Resp. at 3), and it is clear that plaintiff used the term "harassment" in her EEOC charge in connection with her *retaliation claim,* to describe how Utley and others allegedly behaved in response to plaintiff's first EEOC charge.

There being no claims remaining against any defendant, the Clerk is hereby directed to **ENTER FINAL JUDGMENT** in this case stating:

> Judgment is entered in favor of defendant Indiana Toll Road Concession Company; and against plaintiff Laurine M. Carragher, who shall take nothing by way of her complaint.

**SO ORDERED.**

Date: March 27, 2013

 s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT